NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3070
_____

ELECTRA REALTY COMPANY INC.;
LEBO REALTY, L.P.,
                                    Appellants

v.

KAPLAN HIGHER EDUCATION CORPORATION
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civil No. 1-19-cv-00977
District Judge: Honorable John E. Jones, III
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on April 17, 2020

Before: CHAGARES, SCIRICA, and ROTH, <u>Circuit Judges</u>

(Filed: August 28, 2020)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Appellants Electra Realty Company, Inc., and Lebo Realty, L.P., seek review of the trial court's order dismissing their complaint alleging that appellee Kaplan Higher Education Corporation violated contractual agreements with them. We will affirm.[1]

**I.**

Electra and Lebo separately entered into lease agreements with one of Kaplan's subsidiary companies, Thompson Education, LLC. Each lease agreement contained a ten-year term starting in 2006. Under each lease, Kaplan was the guarantor.

The parties' contractual relationships operated without controversy until 2015, when Thompson, through Kaplan, informed Electra and Lebo by letter that it was assigning its leases to Virginia College, LLC, which was a wholly owned subsidiary of Education Corporation of America (ECA). Kaplan's letters contained acknowledgement sections that it asked Electra and Lebo to sign. Kaplan also sent contracts to Electra and Lebo that would release Kaplan as the guarantor, and those documents indicated that ECA would execute a substitute guarantee. The pertinent language stated:

> WHEREAS, in connection with the closing of the Transaction, Guarantor has requested that it be released and discharged from the obligations under the Guaranty at which time Education Corporation of America will execute a substitute guarantee in favor of Landlord.
>
> NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

---

[1] Because the parties are diverse, the District Court had jurisdiction under 28 U.S.C. § 1332(a). We have jurisdiction under 28 U.S.C. § 1291.

1. Release of Guarantor. Effective upon the closing of the Transaction, Guarantor shall be and hereby is unconditionally, irrevocably and forever released and discharged from any and all present, previously existing and hereafter arising obligations, duties or liabilities of any type or nature which are evidenced by or arise under or in respect of the Guaranty, whether any such obligations, duties or liabilities are known or unknown as of the date hereof and the Guaranty is hereby terminated and of no further force or effect, and Landlord represents and warrants to Guarantor that Landlord is the sole owner of, and has not assigned, sold, transferred or otherwise disposed of, any such claim.

App'x 76, 81. Electra and Lebo signed the acknowledgments and the contracts releasing Kaplan as a guarantor. The relationship soured when ECA failed to execute a substitute guarantee and Virginia College stopped paying rent.

Electra and Lebo filed this breach-of-contract action in June 2019, alleging that Kaplan remained liable as the guarantor of their leases with Virginia College. The District Court granted Kaplan's motion to dismiss, holding that Electra and Lebo had each unconditionally released Kaplan as a guarantor, and that Kaplan had no contractual obligation to ensure that ECA would execute a substitute guarantee. Electra and Lebo timely appealed.

## II.

Electra and Lebo argue that the District Court misread the parties' contracts, and that the contracts conditioned Kaplan's release as guarantor on its obligation to secure a substitute guarantor. Because Kaplan failed to do this, they argue, it was not actually released as the guarantor, and it is liable for the rent Virginia College did not pay. Because the parties' contracts unconditionally released Kaplan as guarantor and did not

3

condition that release on securing a substitute guarantor, we will affirm the District Court.[2]

Under the Pennsylvania law applied in this diversity suit, a claim for breach of contract has three elements: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Kaymark v. Bank of Am.*, 783 F.3d 168, 182 (3d Cir. 2015) (quoting *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004)). "When a written contract is clear and unequivocal, its meaning must be determined by its contents alone." *Robert F. Felte, Inc. v. White*, 302 A.2d 347, 351 (Pa. 1973) (internal quotations omitted).

The language of the parties' contracts makes clear that Electra and Lebo unconditionally released Kaplan as a guarantor, stating:

> Release of Guarantor. Effective upon the closing of the Transaction, Guarantor shall be and hereby is unconditionally, irrevocably and forever released and discharged from any and all present, previously existing and hereafter arising obligations, duties or liabilities of any type or nature which are evidenced by or arise under or in respect of the Guaranty, whether any such obligations, duties or liabilities are known or unknown as of the date hereof and the Guaranty is hereby terminated and of no further force or effect . . . .

App'x 76, 81. This language is unconditional, stating that Kaplan's guarantee is "unconditionally, irrevocably and forever released and discharged." There are no qualifications to this broad and absolute release.

---

[2] We review a grant of a motion to dismiss for failure to state a claim de novo. *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012).

Electra and Lebo argue that this release was conditioned on Kaplan's allegedly unfulfilled obligation to secure a substitute guarantee. The only language in the contract referring to a substitute guarantee is in the recitals section of the contracts:

> WHEREAS, in connection with the closing of the Transaction, Guarantor has requested that it be released and discharged from the obligations under the Guaranty at which time Education Corporation of America will execute a substitute guarantee in favor of Landlord.

App'x 76.

But this recital does not alter the parties' agreement to release Kaplan. First, the recital does not mention that *Kaplan* will execute a substitute guarantee, only that Education Corporation of America, a non-party to this action, will. And even if the recital did mention Kaplan, it would have no legal effect here. A recital provision, though it may provide background information or serve as an interpretative aid, does not control over the operative terms of a contract. *See Neal D. Ivey Co. v. Franklin Assoc.*, 87 A.2d 236, 239 (Pa. 1952) (stating that "[t]he specific terms in the body of the contract control" over recitals, such as whereas clauses); *Wyeth Pharm., Inc. v. Borough of West Chester*, 126 A.3d 1055, 1062 (Pa. Commw. Ct. 2015) ("A background recital may not contradict a substantive provision of the contract, but it nevertheless will be looked to in construing the contract." (citation and internal quotation marks omitted)); *see also Gyrnberg v. F.E.R.C.*, 71 F.3d 413, 416 (D.C. Cir. 1995) ("[I]t is standard contract law that a Whereas clause, while sometimes useful as an aid to interpretation, cannot create any right beyond those arising from the operative terms of the document." (citations and internal quotation

marks omitted)). Thus, whatever the import of this language, we do not read it to supplant the unconditional release.

Electra and Lebo nonetheless argue that through the contracts' invocation of "valuable consideration," the unconditional release incorporates the substitute guarantee recital. Because Electra and Lebo didn't receive anything else that was "valuable," they reason, the substitute guarantee must have been what the contracts meant by "valuable consideration." But this argument fails. A contract that contains "an express statement, in any form of language, that the signer intends to be legally bound" cannot be "invalid or unenforceable" for lack of consideration. *See* 33 P.S. § 6; *Socko v. Mid-Atl. Sys. of CPA, Inc.*, 126 A.3d 1266, 1277 (Pa. 2015) ("[A] contract containing a written express statement of intent to be 'legally bound' supplies the necessary consideration to support the enforceability of an agreement.").

Moreover, we cannot read "valuable consideration" to refer to the substitute guarantee because the contracts contain other language that forecloses that reading. *See Lesko v. Frankford Hosp.-Bucks Cty.*, 15 A.3d 337, 342 (Pa. 2011) ("[A]n act or event designated in a contract will not be construed as a condition unless that clearly appears to be the intention of the parties."). The terms of the contracts are clear: Kaplan was "unconditionally, irrevocably and forever released and discharged from any and all present, previously existing and hereafter arising obligations" under the two leases. App'x 76, 81. None of the contracts' terms qualify or limit that absolute language.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.

6